IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARLA COOK,                                          Case No. 3:15-cv-01891-SB

          Plaintiff,

                                        **FINDINGS AND**
   v.                                        **RECOMMENDATION**

CAROLYN W. COLVIN,
Commissioner of Social Security
Administration,

          Defendant.

_____

**BECKERMAN, Magistrate Judge:**

Marla Jean Cook ("Cook") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision should be REVERSED and REMANDED for additional proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

Cook was born in September 1969, making her 39 years old on May 8, 2009, the alleged disability onset date. (Tr. 38.) Cook has a high school education and two years of college classes,

1- FINDINGS AND RECOMMENDATION

and her past experience includes working as an assistant manager at a fast food restaurant, bartender, legal secretary, and paralegal. (Tr. 244.) Cook alleges disability due primarily to degenerative disc disease, numbness in her legs and arms, seizures, grand-mal migraines, depression, and anxiety. (Tr. 243.)

On April 9, 2008, Cook presented for a neurological consultation with Dr. Jeffrey Johnson, who opined that she suffered from cervical spondylosis and stenosis based on the results of a 2008 MRI. (Tr. 321-23.) He further stated that she probably suffered from carpal tunnel syndrome, as she had a positive Phalen test, as well as lower back problems. (*Id.*)

On April 9, 2009, Cook suffered a seizure while baking at her son's school. She fell and hit her head, and was subsequently admitted to the emergency room. (Tr. 567.) She suffered another seizure on August 6, 2009. (Tr. 534.)

On September 11, 2009, Dr. Joshua Boyd completed a psychiatric review of Cook in which he concluded that she did not have a severe psychiatric impairment. (Tr. 393.) He noted that while she complained of difficulties with her memory and concentration, she also stated that she had no difficulty following instructions and handled change well. (*Id.*) Furthermore, he noted that her psychiatric symptoms were well managed by medication. (*Id.*)

On September 10, 2009, Dr. MaryAnn Westfall completed a Residual Functional Capacity ("RFC") assessment, in which she stated that Cook was capable of light work with some limits on her manipulation and environment. (Tr. 380.) The doctor noted that while Cook experienced two recent seizures, she did not have a diagnosis of epilepsy, and her seizures were determined to be related to medication withdrawal. (*Id.*)

On December 4, 2009, Cook completed a seizure questionnaire with Dr. David Wilkinson, who performed a neurological evaluation. (Tr. 398.) The doctor noted that once Cook started taking clonazepam, she no longer suffered any seizures. (*Id.*) He further noted that a CT

2- FINDINGS AND RECOMMENDATION

scan of her head was normal, as was as an electroencephalogram (EEG). (*Id.*) He diagnosed her with benzodiazepine withdrawal seizures. (*Id.*)

On January 22, 2010, Cook underwent carpal tunnel release surgery on her right hand. (Tr. 493.) In an office visit on June 3, 2010, she reported that her right hand felt good and she was not suffering from pain or numbness. (Tr. 632.) She further stated that while she thought she had more back pain, her pain medication seemed to be mostly working. (*Id.*) Additionally, she failed to keep her appointment with her therapist because she felt her depression and anxiety were improving. (*Id.*)

On August 2, 2010, Cook changed her pain medication from morphine to oxycodone because she felt it was more helpful. (Tr. 640.) She reported walking two miles per day, and that Trazodone helped her sleep. (*Id.*)

On February 16, 2011, Cook underwent an MRI, which indicated mild interval progression of her cervical spondylosis since a 2008 MRI. (Tr. 455-56.) The 2011 MRI also indicated foraminal stenosis at the C6-7 level. (*Id.*) Her lumbar spine was essentially normal for her age, with mild multilevel lumbar spondylosis. (*Id.*)

On June 6, 2012, Cook's friend, Maeleen Au, completed a third party adult function report. (Tr. 252.) Ms. Au stated that Cook could not stand or walk for long periods of time or hold her head up because of her conditions. (*Id.*) Ms. Au believed it was difficult for Cook to get out of bed or raise her arms above her head, as she "is in too much pain to do anything." (Tr. 256.) Ms. Au also stated that Cook's medications caused dizziness, drowsiness, and blurred vision. (*Id.*)

On June 6, 2012, Cook completed her own adult function report. (Tr. 260.) She stated that she cannot stand or walk for longer than 30 minutes; has pain, numbness, and tingling in her back, neck, arms, and legs; and has two to three migraines per month. (*Id.*) She could do

housework, but slowly and with breaks, and her hobbies included watching television and reading. (Tr. 261.) Her sleep was reportedly affected by muscle spasms and restless legs. (*Id.*) She endorsed difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, concentrating, and using her hands. (Tr. 265.) She indicated that her medications caused drowsiness, dizziness, and blurred vision. (Tr. 266.)

Cook cancelled or did not attend her scheduled therapy sessions in June, August, and September of 2012. (Tr. 729-31.)

On May 30, 2013, Cook suffered three seizures and went to the emergency room. (Tr. 851.)

Cook attended numerous counseling appointments from October 2013 until January 2014. (Tr. 755-90.)

On March 13, 2014, Cook participated in a one-time disability evaluation by Dr. Michelle Hall. (Tr. 884-87.) Dr. Hall opined that Cook suffered from anxiety, depression, insomnia, headaches and migraines, seizures, back pain, GERD, tremors, convulsions, vision loss, and plantar fasciitis. (*Id.*) She stated that Cook could occasionally lift 10 pounds and frequently lift no weight, could walk and stand for one hour at a time, and sit for one hour at a time. (*Id.*) She also indicated that Cook should never climb, stoop, kneel, crouch, or crawl; could occasionally reach over her head and to shoulder height; could frequently balance; and perform handling, fingering, and feeling actions. (*Id.*) Finally, she opined that Cook had been limited for several years, that her concentration would be adversely affected for 50 percent of the work day, and that Cook would miss more than two full work days per month. (*Id.*)

An administrative law judge ("ALJ") convened a hearing on March 17, 2014, at which Cook testified about the limitations resulting from her impairments. (Tr. 36-78.) Cook testified that she has two children, a seventeen-year-old son and a fifteen-year-old daughter; she went to

4- FINDINGS AND RECOMMENDATION

college for two years and earned a certificate in court reporting; she has difficulty seeing; suffers from migraines as well as back and neck pain; experiences memory loss and tremors, which had worsened after her 2009 seizure; uses a Fentanyl patch to help control her back and neck pain and Topamax to control her seizures; believes medications affect her concentration and memory; avoids socializing with people because she is on too much medication; suffers from depression and anxiety because her conditions limit her activities; and goes to counseling sessions for depression and anxiety. She further testified that she performed paralegal work for four years, worked as a painter for a year, and infrequently bartended from April 2010 to July 2010. (*Id.*)

The ALJ posed a series of questions to a vocational expert ("VE"), who also testified at Cook's hearing. The ALJ first asked the VE to assume that a hypothetical worker of Cook's age, education, and work experience was limited to light work, and further limited to occasional overhead reaching bilaterally and frequent fingering. The VE testified that Cook could perform her past work as a paralegal, file clerk, fast food worker, fast food manager, bartender, server, or short-order cook. (Tr. 67-69.)

The ALJ then added the additional restriction of alternating between sitting and standing every 30 minutes, to which the VE testified that the bartender, server, fast food worker, paralegal, and cook jobs would not accommodate such a restriction; however, the file clerk and fast food manager would accommodate the restriction. (Tr. 69-70.)

The ALJ further adjusted the hypothetical, adding a limitation to occasional fine manipulation, which eliminated the bartender and server jobs. (Tr. 70.) The VE stated that Cook possessed the transferable skills of basic computer skills, customer service skills, and informative skills. (Tr. 71.) She could perform work as an information clerk, of which there are 98,000 positions in the national economy and 1,000 positions in the regional economy. (*Id.*) The VE

further stated that Cook could perform work as a child attendant, of which there are 40,000 positions nationally and about 430 positions regionally. (Tr. 72.)

The ALJ posed another hypothetical, limiting Cook to sedentary work with a sit- or stand-at-will option and only occasional fingering. (*Id.*) The VE stated that an elections clerk position would fulfill the requirements, as well as a surveillance system monitoring position. (Tr. 72-73.)

The ALJ then asked about the customary tolerances of employers with respect to being off-task for 20 percent of the work day. The VE testified that such a person would not be able to maintain employment. (Tr. 76.) The ALJ next asked if a hypothetical person could miss 16 hours of work or more per month. The VE testified that such a person would not be able to maintain employment. (*Id.*)

In a written decision issued on April 11, 2014, the ALJ applied the five-step sequential evaluation process set forth at 20 C.F.R. § 416.920(a)(4), and found that Cook was not disabled. The Appeals Council denied Cook's petition for review, making the ALJ's decision the Commissioner's final decision. Cook timely appealed to federal court.

## II.  THE FIVE-STEP SEQUENTIAL PROCESS

### A.    Legal Standard

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal [one of the listed impairments]? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. The claimant bears the burden of proof for the first four steps in the process. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of the first four steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

**B.    The ALJ's Decision**

At the first step of the sequential process, the ALJ found that Cook had not engaged in substantial gainful activity since April 5, 2012, the date she filed the application. At the second step, the ALJ found that Cook had the severe medically determinable impairments of multilevel degenerative disc disease of the cervical spine, migraines, carpal tunnel syndrome, depression, anxiety, and seizures secondary to prescription medicine abuse. (Tr. 18-19.)

At the third step, the ALJ found that Cook's combination of impairments was not the equivalent of any of those on the Listing of Impairments. The ALJ then assessed Cook's RFC and found that she could perform light work subject to the following limitations: (1) she can occasionally perform overhead bilateral reaching; (2) she is limited to frequent, not constant, fine manipulation; (3) she needs to alternate between sitting and standing about every 30 minutes, but

7- FINDINGS AND RECOMMENDATION

can remain at her workstation and be productive; and (4) she is limited to simple routine work. (Tr. 21.)

At the fourth step, the ALJ concluded that Cook could perform her past relevant work as a paralegal or legal clerk. (Tr. 28.) Accordingly, the ALJ concluded that Cook was not disabled, as defined under the Social Security Act, during the relevant time period.

## III.  STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or [are] based on legal error." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record, weighing both the evidence that supports the Commissioner's conclusions, and the evidence that detracts from those conclusions. *Id.* However, if the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the district court may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## IV.  DISCUSSION

Cook alleges the ALJ erred by improperly assessing: (A) her subjective symptom testimony; (B) the medical evidence; (C) her impairments at step two; (D) the lay witness

8- FINDINGS AND RECOMMENDATION

statements; and (E) steps four and five. As explained below, the Court recommends that the Commissioner's decision be remanded for additional proceedings.

A.    **Cook's Subjective Symptom Testimony**

1.    **Applicable Law**

In the Ninth Circuit, absent an express finding of malingering, an ALJ must provide specific, clear, and convincing reasons for rejecting a claimant's testimony:

> Without affirmative evidence showing that the claimant is malingering, the [ALJ]'s reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 597 (9th Cir. 1999) (citations omitted). Clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 6:11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

In assessing a claimant's credibility, an ALJ may also consider (1) "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid,"

and (2) "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, district courts may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan*, 169 F.3d at 600).

The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination, and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). However, the ALJ's June 2015 decision was issued nearly one year before SSR 16-3p became effective, and there is no binding precedent establishing that this new ruling applies retroactively. *See Ashlock v. Colvin*, No. 3:15-cv-05767 DWC, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date); *see also Garner v. Colvin*, 626 Fed. Appx. 699, 701 (9th Cir. 2015) ("[W]e cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time[.]").

## 2.    Application of Law to Fact

There is no affirmative evidence that Cook is malingering and, therefore, the ALJ was required to provide specific, clear, and convincing reasons for discrediting Cook's testimony. As explained below, the Court concludes that the ALJ satisfied the standard.

The ALJ doubted Cook's subjective symptom testimony because it conflicted with the medical evidence of record. Inconsistency between a plaintiff's subjective symptom testimony and the medical evidence is a clear and convincing reason to discount that testimony, so long as it is not the only reason. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (valid factors for doubting credibility include "whether the alleged symptoms are consistent with the

medical evidence"). Here, the ALJ engaged in a lengthy recitation of Cook's medical records, which demonstrated a higher level of functioning than Cook alleged. (Tr. 21-25.) For example, Cook alleged that muscle spasms and restless legs disrupt her sleep and contribute to her insomnia; however, medical records revealed that Trazodone was "very helpful for her sleep" and she "feels rested in the morning." (Tr. 23, 640.) Cook also alleged that she required two hours of rest after walking 20 minutes, but medical records indicate she walked between two to five miles daily. (Tr. 640, 836.) While Cook alleged she suffers from migraines two to three times per month, the medical record indicates that Fiorinal and Fentanyl provided "good relief" from her migraines. (Tr. 422, 822.) Finally, medical records also demonstrate that Cook's seizures are well controlled with Klonopin and, according to Dr. Lindsey Horenblas, are probably caused by withdrawal from benzodiazepine. (Tr. 528, 874.) While Cook offered a different interpretation of the medical evidence, the ALJ's interpretation is rational. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision[.]").

The ALJ further noted that Cook failed to attend many of her depression and anxiety counseling sessions, (Tr. 729-31) which is another clear and convincing reason to doubt her subjective symptom testimony. *See Lingenfelter*, 504 F.3d at 1028 (holding that a plaintiff's failure to follow, without adequate explanation, a prescribed course of treatment is a clear and convincing reason to doubt the plaintiff's subjective testimony).

The ALJ also doubted Cook's subjective symptom testimony because her activities of daily living were inconsistent with her alleged level of functioning. This is a clear and convincing reason to discredit a plaintiff's symptom testimony. *Molina*, 674 F.3d at 1112-13. Cook alleged that she can no longer swim due to pain; however, the record reveals that she performs water aerobics. (Tr. 261, 704.) Cook also stated she could not walk very far before her

11- FINDINGS AND RECOMMENDATION

back tightens up, yet she walks her children to and from school. (Tr. 265, 704.) Additionally, Cook's other activities of daily living, including dusting, laundry, watering plants, doing dishes, cleaning, preparing meals, and following spoken and written instructions, contradict her allegations of difficulty lifting, bending, standing, reaching, walking, sitting, concentrating, using her hands, and remembering. (Tr. 260-68.) Cook argues that she has difficulty completing these activities of daily living, but the fact that she has succeeded at accomplishing them allows the inference of a higher level of functioning than alleged. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (an ALJ is entitled to draw inferences logically flowing from the evidence). The ALJ provided specific, clear, and convincing reasons for discrediting Cook's subjective symptom testimony.

**B.     Medical Evidence**

**1.     Applicable Law**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the ALJ must determine credibility and resolve the conflict." *Id.* (quoting *Thomas*, 278 F.3d at 956-57). "An ALJ may only reject a treating physician's contradicted opinions by providing specific and legitimate reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions, however, is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

## 2.    Application of Law to Fact

Cook argues that the ALJ failed to offer legally sufficient reasons for rejecting the opinion of Dr. Hall, her treating physician. Dr. Hall's opinion conflicts with the opinions of the non-examining state agency medical consultants, and therefore the ALJ was required to provide specific and legitimate reasons for assigning limited weight to Dr. Hall's opinion. *Batson*, 359 F.3d at 1195. The ALJ assigned little weight to Dr. Hall's opinion because it was conclusory, and conflicted with objective medical evidence and with Cook's activities of daily living. The Court holds that the ALJ did not err.

The ALJ concluded that Dr. Hall's opinion conflicted with objective medical evidence. Inconsistency between a physician's opinion and the medical record is a specific and legitimate reason for giving little weight to that opinion. *See Tommasetti*, 533 F.3d at 1041. Here, the ALJ cited medical evidence from the record, including normal EEG readings, normal tandem gait with normal toe-heel walk, and a normal EKG and CT scan. (Tr. 854.) Furthermore, the ALJ noted that Cook's seizures are adequately controlled by Topamax, and her back pain is adequately controlled by Fentanyl and Gabapentin. (Tr. 848.) These results are inconsistent with Dr. Hall's opinion, in which she states that Cook's concentration would be impaired for 50 percent of the work day and she would miss at least 16 hours of work per month. (Tr. 886.)

13- FINDINGS AND RECOMMENDATION

Finally, while Dr. Hall stated that Cook's primary symptoms included anxiety and depression, the record shows that Cook declined to attend therapy sessions because her anxiety and depression were improved. (Tr. 24.) While Cook argues for a different reading of the record, the ALJ's interpretation was rational. Therefore, the ALJ did not err in relying upon the conflicting medical reports. *Batson*, 359 F.3d at 1193.

The ALJ also gave little weight to Dr. Hall's opinion because it conflicted with Cook's activities of daily living. Inconsistency between a physician's opinion and a plaintiff's activities of daily living is a specific and legitimate reason to discount the opinion. *Morgan*, 169 F.3d at 600-02. Here, the ALJ gave numerous examples of Cook's activities of daily living that contradict Dr. Hall's opinion, including walking two to five miles per day, camping, engaging in water aerobics, and caring for her two children. (Tr. 261, 408, 690, 704, 836, 845.) The Court finds that the ALJ's cited reasons for assigning little weight to Dr. Hall's opinion were specific and legitimate, and supported by substantial evidence.

## C.    Step Two Impairments

Cook argues that the ALJ erred by failing to find that her insomnia and tremors were severe impairments at step two of the five-step sequential process. The Court disagrees. Cook argues that the alleged error at step two is harmful because the ALJ did not account for her insomnia and tremors in the RFC. The Court finds that the ALJ's RFC adequately addressed Cook's alleged impairments. *See Burke v. Comm'r of Soc. Sec.*, No. 3:13-CV-01890-MA, 2015 WL 769951, at *5 (D. Or. Feb. 23, 2015) (an ALJ's RFC "must be consistent with the restrictions identified in the medical testimony"). With regard to Cook's insomnia, Cook is limited to "simple routine work," and Trazodone helped her sleep. (Tr. 640.) Conditions that are adequately controlled by medication are not severe. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). With regard to Cook's tremors, she is also limited to "frequent,

14- FINDINGS AND RECOMMENDATION

not constant, fine manipulation," a limitation endorsed by the opinions of Drs. Eder, Westfall, and Hall. (Tr. 88, 115, 885.) The ALJ adequately addressed Cook's impairments, and therefore the ALJ did not err by failing to find that Cook's insomnia and tremors were severe impairments.

**D.     Lay Witness Testimony**

**1.     Applicable Law**

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Such testimony cannot be disregarded without providing specific reasons that are germane to each witness. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 10–1432, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012).

**2.     Application of Law to Fact**

Ms. Au, Cook's friend, completed an adult function report, the contents of which are outlined above. In rejecting Ms. Au's testimony, the ALJ found that the medical records did not support the assertion that Cook's pain was intolerable, that Cook's habit of walking two to five miles a day does not support the assertion that she feared losing her ability to walk, and that Cook's many daily activities do not support the assertion that she "is in too much pain to do anything." (Tr. 26.)

Cook argues that the ALJ incorrectly concluded that she walks two to five miles per day because, at the hearing, she testified that she walks two miles per week. (Tr. 49.) The ALJ is responsible for resolving ambiguities in the record. *Reddick*, 157 F.3d at 722. In 2010, Cook

15- FINDINGS AND RECOMMENDATION

reported that she walked two miles daily, and in 2013 Cook reported she walked two to five miles daily. (Tr. 640, 836.) The ALJ did not err in resolving this ambiguity.

Even assuming the ALJ erred in evaluating Cook's walking ability, the ALJ provided other germane reasons, supported by substantial evidence, to disregard Ms. Au's testimony. Cook does not contest these other reasons, and therefore has waived any challenges to these reasons. *See Gunn v. Colvin*, 581 Fed. App'x 691, 691 (9th Cir. 2014). The Court finds that the ALJ did not err.

**E.      Evaluation of Steps Four and Five**

**1.      Applicable Law**

"The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant." *Valentine,* 574 F.3d at 690 (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Therefore, "an RFC that fails to take into account a claimant's limitations is defective." *Id.*

**2.      Application of Law to Fact**

The ALJ concluded that Cook could perform her past work as a paralegal/legal clerk, and therefore was not disabled. (Tr. 28.) Cook argues, and the Commissioner concedes, that the ALJ committed harmful error by concluding that Cook could perform her past work as a paralegal/legal clerk, because that past work is clearly incompatible with her assigned RFC. In light of the ALJ error, the Court recommends remand for additional proceedings.

**F.      Remand for Additional Proceedings**

In light of the ALJ's step four error, the Court must address the proper remedy. In a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [three] conditions are met." *Garrison*, 759 F.3d at 1020 (citations omitted). Specifically, a district court

should reverse and remand for an award of benefits when the following "credit-as-true" criteria are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id*. Even when these "credit-as-true" criteria are satisfied, however, district courts in this circuit retain the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*.

The ALJ determined that Cook could perform her former job as a paralegal, which was inconsistent with her RFC. However, the record has not been fully developed, and is unclear as to whether Cook can perform other jobs in the national economy. Therefore, further administrative proceedings would serve a useful purpose, and the district judge should remand to provide the Commissioner an opportunity to reevaluate steps four and five.

## V.  CONCLUSION

Based on the foregoing, the Commissioner's decision should be REVERSED and REMANDED for additional proceedings.

//

//

//

//

//

//

//

## VI.  SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 15th day of November, 2016.

_____
STACIE F. BECKERMAN
United States Magistrate Judge